FORD v. COLE et al.   (No. 1143.)

(Court of Civil Appeals of Texas. Amarillo. May 9, 1917. Rehearing Denied June 13, 1917.)

1. BROKERS ⬅57(2)—COMPENSATION—SALE BY OWNER ON DIFFERENT TERMS.

If an agent is the procuring cause of a sale, he is entitled to the reasonable value of his services, though the principal concludes the sale at a reduced price or on different terms to the purchaser so secured.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 66, 67, 72.]

2. BROKERS ⬅56(2)—COMPENSATION—SALE BY OWNER.

While a principal, in the absence of a contract to the contrary, may sell without being liable to a broker if such sale is made in good faith, this will not exempt him from paying the broker the reasonable value of his services if he sells to a purchaser produced by the agent, though he did not know the purchaser was so induced at the time of the sale.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 85.]

3. BROKERS ⬅88(3)—ACTIONS FOR COMMISSIONS—QUESTIONS OF FACT.

The efficient and procuring cause of a sale is a question of fact, to be determined by the court or jury trying the case.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 128, 129.]

4. BROKERS ⬅85(2)—ACTIONS FOR COMMISSIONS—EVIDENCE—PROCURING CAUSE OF SALE.

In a broker's action for commissions on a sale to K. of a part of the ranch placed with him for sale, where defendants claimed that K. was interested in the land by one of them and not by plaintiff, evidence that defendant, when the land was listed with him, sent a person to tell K. the ranch was on the market and the price for which it could be purchased, and that K. sent back word that he would be in the vicinity of the land and would take the matter up, should have been admitted.

5. APPEAL AND ERROR ⬅1056(4)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

The exclusion of such evidence did not require a reversal, where the court evidently found that plaintiff had abandoned negotiations with K. before the sale was effected and there was evidence to sustain such finding and to show that a sale could not have been made to K. on the terms plaintiff was authorized to offer.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4190.]

6. BROKERS ⬅86(4)—ACTIONS FOR COMPENSATION—SUFFICIENCY OF EVIDENCE.

Evidence held sufficient to warrant a finding that negotiations between plaintiff and K. were terminated before the sale was effected by defendants.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 117.]

Appeal from District Court, Wheeler County; Frank Willis, Judge.

Action by F. G. Ford against C. B. Cole and another. From a judgment for defendants, plaintiff appeals. Affirmed.

J. B. Reynolds, of Wheeler, for appellant. Baker & Willis, of Canadian, for appellees.

HUFF, C. J.　F. G. Ford brought suit for the recovery of commissions due him by C.

B. Cole and W. L. Mathers. Appellant alleges he was a real estate broker, and that appellees were partners, running a cattle ranch, which consisted in part of two tracts of land, known as sections 33 and 34, in Wheeler county; that defendants and each of them employed him to sell the land for them and each of them, at such price and upon such terms as defendants might accept as satisfactory, the price and terms to be determined when plaintiff should procure for defendant a purchaser, and for such services agreed to pay 5 per cent. of the price at which the land sold; that he accepted the employment, and soon thereafter found one J. F. Kelly, and succeeded in interesting him in the land, and which resulted in a meeting between Kelly and defendants, and the sale to Kelly by defendants of the land at the sum of $19,-000; and, further, in the manner above, plaintiff found the purchaser, interested him in buying the land, caused his conference with defendants, and became and was the efficient and procuring cause of the sale, whereby defendants became liable, etc.; and further, at the special instance and request of defendants, plaintiff performed the above services, which were known, accepted, and adopted by defendants, which were the efficient and procuring cause of the sale of the land to Kelly, and by reason thereof defendants were bound to pay plaintiff the reasonable value of his services, which is alleged to be 5 per cent. of the price obtained, or $950. The answer of the appellees in effect amounted to a special denial of the agency contract and the services alleged to have been performed. The case was tried without a jury, and is in this court upon a statement of facts. Appellant testified substantially that Mathers and Cole told him that there was a certain option contract on the land, and, if not accepted, they would list the ranch with him for sale, which consisted of some three sections of land. In a day or two after the expiration of the option Cole came to the office of appellant and said that he and Mathers had talked it over and decided to list the land with him to sell for the sum of $30,000 net to them; that he informed Cole he did not sell land that way. Cole then said to him to price it at $35,000, which would include work, stock, and tools, and that would give them room to drop down in case they had to do so, and directed him to do it right away. He also states some few days before the expiration of the option that he had told Cole that a Mr. Kelly had been looking at land near to and adjoining appellees' ranch, and that if he purchased, he would want more land; that when Cole listed the land he directed Mr. Gossett to go to see Kelly, then residing in Collingsworth county, and state to him the proposition. Cole's testimony indicates that the contract was substantially as stated by Ford. The facts in this case indicate that Mr. Kelly, who afterwards purchased two

sections of this ranch, was trying to conclude negotiations for the purchase of a section of land in that neighborhood known as the Diggs section, and that Ford was in some way connected with these negotiations; that this trade for the Diggs land took some two or three months to conclude. The facts also indicate that Kelly desired, if he purchased the Diggs' section, to get additional land near it. From Ford's testimony he shows that he was trying to interest Kelly in other tracts of land than then under negotiation, and also called attention to the ranch, in which he stated to him that that was the best proposition that he had, and that he knew they thought the price too high, and that they were not interested in it on that account; he yet suggested to them that it was a good proposition. Mathers, one of the owners and partners, states that he had no conversation with Ford with reference to this land, and knew nothing about his claiming to have had anything to do with inducing Kelly to look at it, but that he wrote Kelly, just when the record does not disclose, calling his attention to the lands in question; that upon one of Kelly's trips and while out on the Diggs land, he met Kelly, and found that he was an old acquaintance of his, and entered into some preliminary negotiations. Kelly states that he had heard nothing from Ford with reference to this land, and that the first he knew of it was from the letter of Mathers to himself, but on the trip, at which time he concluded negotiations with Mathers for the land, that Ford said something about selling him the entire ranch for $35,000, and wanted him to look at some other lands, and Kelly declined to accept his services to look at other lands, as he had his own car and had other parties with him, and, further, that he was not able to buy the ranch, and did not want that much land, and did not consider Mr. Ford's proposition, but that he had been in negotiations with Mathers previous to this time.

We have concluded that in disposing of the third assignment of error we may discuss the various issues involved in this case and raised by other assignments. This assignment is based upon the exclusion of the testimony offered by appellant of G. E. Gossett, to the effect that he went to see Kelly at Dodsonville, his then residence at the instance and request of Ford, to deliver to Kelly the information, which he did deliver, that a certain option was out, and that the Mathers-Cole ranch was on the market, and to state to Kelly the price for which it could be purchased, and that Kelly sent word back by him that he would be in Wheeler county, where the land was situated and Ford resided, and would take the matter up. The bill of exceptions shows that when Gossett was on the witness stand he was asked what occurred between him and Kelly, and, without any objection being interposed, the trial judge remarked that:

"Any answer the witness might give would not be admissible: First, because the plaintiff himself had already testified that he was employed to sell the entire ranch for $35,000, and that he did not find a purchaser ready, willing, and able to take the ranch at that price; and, second, that any conversation between the witness and Kelly sought to be elicited would be res inter alios acta and not binding."

The defendant then urged the objection suggested by the court, which he sustained, and refused to permit the witness to answer the question, and announced that such ruling would cover all other questions to the witness relative to his trip and seeing and conversing with Kelly.

[1-3] If an agent is the procuring cause of of a sale, he is entitled to recover compensation for his services, even though the principal may have concluded the sale at a reduced price to the purchaser so secured. If Ford was the procuring cause in producing Kelly as a purchaser and thereafter appellees changed the terms, he would nevertheless be entitled to something—if not the amount specified in the agency contract, then the reasonable value of his services. McDonald v. Cabiness, 100 Tex. 615, 102 S. W. 721; Goodwin v. Gunter (Sup.) 185 S. W. 295, and authorities cited. While the principal, in the absence of a contract to the contrary, may sell without being liable if such sale is made in good faith (English v. George Realty Co., 55 Tex. Civ. App. 137, 117 S. W. 996; Bomar v. Munn, 158 S. W. 1186), this will not, however, exempt him from paying the agent the reasonable value of his services if the owner should sell to a purchaser who was produced by the agent, even if the owner did not know the purchaser was so induced at the time of the sale. Webb v. Harding, 159 S. W. 1029; Schultz v. Zelman, 111 S. W. 776; Hancock v. Stacy, 103 Tex. 219, 125 S. W. 884; Graves v. Baines, 78 Tex. 92, 14 S. W. 256. The efficient and procuring cause of the sale is one of fact, to be determined by the court or the jury trying the case. Goodwin v. Gunter, supra. Kelly's testimony and that of Mathers is susceptible of the conclusion that Mathers, by letter to Kelly, first brought about the negotiation between Kelly and Mathers which finally resulted in the sale, and as a matter of fact Ford did not induce the negotiations, or procure Kelly as a purchaser of the land; at least the evidence is sufficient to have authorized the judgment upon that issue.

[4-6] The difficulty we have in this case is the reasons given by the trial court in excluding the testimony of Gossett. We believe the court should have admitted this testimony, but whether it was such an error as will require a reversal is one for our consideration, and whether it was calculated and probably did injure the rights of the appellant. The trial court appears to have regarded the contract as one for the sale of the entire ranch for $35,000, and that Ford's testimony disclosed that he did not find a purchaser ready, willing, and able to take the ranch at that price. We, therefore, conclude he found from Ford's evidence that he had made an effort to sell the ranch to Kelly, who had declined to take the land at that price, and that he was unwilling and unable to purchase the ranch upon the terms offered. There is some evidence from Ford which would indicate that he did nothing further to bring about a sale than the mere statement of the price of the ranch, and that thereafter he abandoned further negotiations, and that appellees in effect made the sale and concluded it with Kelly without the assistance of Ford. There are other facts, however, in the record, which would warrant a different finding, but the statement of the trial court evidences he found as above stated. The Supreme Court, in Pryor v. Jolly, 91 Tex. 86, 40 S. W. 959, appears to have established the rule that where the broker's effort with the buyer has failed after a fair opportunity and without fault of the owner and resulted in the termination of the negotiations, the owner may, by direct and independent negotiations, effect a sale to the same buyer, though it be upon the same terms originally authorized to the broker. Under such circumstances it is said the broker cannot justly be said to be the procuring cause of the owner's sale, and the latter incurs no liability. Goodwin v. Gunter, and English v. George Realty Co., supra. Kelly himself testified that he did not want the entire ranch, and that he was unwilling and unable to pay that price. He declined to accept Ford's proffered services to show the land, or perhaps other land. This would be sufficient to base a finding that the negotiations were terminated between them. It is shown by Ford's evidence that he called Kelly's attention to the ranch, but that Kelly regarded the price too high and was unwilling to entertain his proposition on that ground; that he never in fact showed the land to Kelly, but directed another to do so; but we are not able to state with any degree of certainty that the party so directed did actually show the land to Kelly. Further on the evidence strongly indicates that Ford was trying to induce Kelly to look at other land, and was not making any very special effort to sell the appellees' land. While we think the court should have admitted the testimony, yet, under his statement we are not prepared to say any injury resulted, as it is evident the court regarded appellant's testimony as showing a termination of the negotiations. The further evidence of Kelly and Mathers shows Gossett's message, if delivered as claimed by appellant, would not have effected a sale, at the price of the ranch which Ford was authorized to offer and did offer; that all negotiations were suspended, and thereafter the owners made a sale of the two sections for a different price without the assistance or procurement of Ford, and that more than likely it was brought about by the letter of Mathers to Kelly. We have concluded, therefore, to affirm the case.